UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2002 DEC -6 P 3: 46

U.S. DISTRICT COURT
DISTRICT OF MASS.

DEVELOPMENT SPECIALISTS, INC.,            )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )       CIVIL ACTION
                                          )       NO.: 02-12171-RWZ
EXECUTIVE RISK INDEMNITY INC.,            )
GENESIS INSURANCE COMPANY, LLOYD'S        )
& COMPANIES SYNDICATE NOS. 839, 376       )
and 2376, WILLIAM M. HANEY, III,          )
CHRISTOPHER J. NAGEL, JOHN T. PRESTON,    )
PETER A. LEWIS, CHARLES W. SHAVER,        )
MARIE J. LANGLOIS, ETHAN JACKS,           )
EUGENE BERMAN, DAVID HOEY, F.             )
GORDON BITTER, R.W. BECK, INC., and       )
THE BLACKSTONE GROUP, LP,                 )
                                          )
        Defendants.                       )
                                          )

## AMENDED COMPLAINT

### INTRODUCTION

This action seeks damages, as well as judgment pursuant to 28 U.S.C. §§ 2201 and 2202,

declaring that Defendants must advance legal defense costs to Plaintiff Development Specialists,

Inc. ("DSI") and indemnify it against any damages or settlement amounts arising out of a certain

lawsuit filed against it, entitled MMT Recovery LLC et al. v. Haney, et al., Civil Action No.

01-10062-MLW (the "MMT Recovery Action"). For some Defendants, that duty arises under

certain Directors and Officers liability insurance policies they issued, because DSI has been sued

in the MMT Recovery Action solely on a vicarious liability theory as an alleged de facto officer

of Molten Metals, Inc., the corporation which purchased the insurance policies. For other

Defendants, the obligation for contribution and indemnification arises by virtue of the fact that

they were active tortfeasors and responsible for any damages for which the plaintiffs in the MMT Recovery Action seek recovery, while DSI has been charged with, at most, vicarious and passive responsibility.

## PARTIES AND JURSIDICTION

1.      Plaintiff Development Specialists, Inc. ("DSI") is an Illinois corporation with a principal place of business in Chicago, Illinois.

2.      Defendant William M. Haney III ("Haney") is, and at all relevant times was, an individual residing in Massachusetts.

3.      Defendant Christopher J. Nagel ("Nagel") is, and at all relevant times was, an individual residing in Massachusetts.

4.      Defendant John T. Preston ("Preston") is, and at all relevant times was, an individual residing in Massachusetts.

5.      Defendant Peter A. Lewis ("Lewis") is, and at all relevant times was, an individual residing in New York.

6.      Defendant Charles W. Shaver ("Shaver") is, and at all relevant times was, an individual residing in Massachusetts.

7.      Defendant Ethan Jacks ("Jacks") is, and at all relevant times was, an individual residing in Massachusetts.

8.      Defendant Eugene Berman ("Berman") is, and at all relevant times was, an individual residing in Maryland.

9.      Defendant David Hoey ("Hoey") is, and at all relevant times was, an individual residing in Massachusetts.

10.     Defendant Marie Langlois ("Langlois") is, and at all relevant times was, an individual residing in Massachusetts.

11.     Defendant F. Gordon Bitter ("Bitter") is, and was at all relevant times was, an individual residing in New York.

12.     Haney, Nagel, Preston, Lewis, Shaver, Jacks, Berman, Hoey, Langlois, and Bitter (the "Officers and Directors") were at various relevant times the officers and/or directors of Molten Metal Technology, Inc. ("Molten Metal"), a corporation organized under the laws of the State of Delaware, which had its principal place of business in Waltham, Massachusetts.

13.     Upon information and belief, Defendant Executive Risk Indemnity Inc. ("Executive Risk" ) is a corporation organized under the laws of the State of Delaware, which has its principal place of business at Simsbury, Connecticut, and which, at all relevant times, conducted business in Massachusetts.

14.     Upon information and belief, Defendant Genesis Insurance Company ("Genesis") is a corporation organized under the laws of the State of Delaware, which has its principal place of business at Stamford, Connecticut, and which, at all relevant times, conducted business in Massachusetts.

15.     Upon information and belief, Defendant Lloyd's & Companies Syndicates Nos. 839, 376, and 2376 ("Lloyd's") are foreign insurance associations with their principal place of business at London, England and a principal place of business in the United States in New York, New York, and which, at all relevant times, conducted business in Massachusetts on a regular and substantial basis. (Lloyd's, Genesis, and Executive Risk are referred to collectively as the "Insurers.")

16.     Upon information and belief, Defendant The Blackstone Group, LP ("Blackstone") is a partnership with a principal place of business in New York. At relevant times hereto Blackstone was a financial consultant providing services to Molten Metals in conjunction with Molten Metal's bankruptcy and its efforts to secure post-petition financing.

17.     Defendant, R. W. Beck, Inc. ("R.W. Beck") is a corporation with a usual place of business in Framingham, Massachusetts. R.W. Beck is an engineering consulting firm which provided services at relevant times hereto to Molten Metal and the post-petition lenders.

18.     Jurisdiction is based upon 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000.00 and the controversy is between citizens of different states.

19.     Venue is proper under 28 U.S.C. § 1391(a)(2) and (3), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and Defendants are subject to personal jurisdiction in this district.

### NATURE OF THE ACTION

20.     This is an action for a declaratory judgment, breach of contract, contribution, indemnification, attorneys' fees, and violation of G.L. c. 93A and c. 176D.

### FACTS

#### Molten Metal's Bankruptcy and DSI's Appointment As Financial Professional

21.     Molten Metal was a corporation which developed certain unique technologies for the processing of hazardous waste.

22.     DSI was hired by Molten Metal to "assist management in the development of financial models, projections and reports in order to refine ... cash needs and to develop meaningful pro forma reports; evaluate ... financial, operational and marketing conditions and options; assist in negotiations with creditors; analyze, from a business perspective, the various

alternatives available to ... restructure [ ] debts; and assist ... preparing for Chapter 11 filing." At no time was DSI retained to evaluate the unique Molten Metal technology, something that was far afield from DSI's financial tasks.

23.     Bitter signed the retention agreement as CEO of Molten Metal on or about November 6, 1997. At the time Bitter signed the agreement, Molten Metal was insolvent, as Bitter was aware.

24.     On December 3, 1997, Molten Metal filed a voluntary Chapter 11 bankruptcy petition.

25.     DSI was approved by the Bankruptcy Court in Molten Metal's Chapter 11 reorganization proceedings as a professional providing solely financial assistance to the debtor-in-possession. Specifically, on January 15, 1998, the Bankruptcy Court approved Molten Metal's Motion for Retention of DSI to perform accounting management oversight, bankruptcy case management, and reorganization planning. At no time was DSI retained to evaluate the unique Molten Metal technology, something that was far afield from DSI's financial tasks. Had DSI purported to undertake an evaluation of the Molten Metal technology, such an evaluation would have been so far afield from its approved tasks that any efforts in that regard would have been rejected by the Bankruptcy Court and uncompensated.

Executive Risk Policy

26.     Upon information and belief, on or about January 19, 1998, after the bankruptcy petition and after the retention of DSI, in consideration of a premium of $350,000.00, which Molten Metal duly paid to Executive Risk, Executive Risk entered into, issued, and delivered to Molten Metal, in the Commonwealth of Massachusetts, a written contract of insurance entitled "Directors and Officers Liability Insurance Policy," bearing a policy number 751-091628-98,

and covering the period from January 19, 1998 through January 19, 1999 (the "Executive Risk Policy"). A copy of the Executive Risk Policy is attached as Exhibit A. The Executive Risk Policy was duly renewed through January 19, 2002.

27. Under Section I of the Executive Risk Policy, Executive Risk is obligated to pay "on behalf of the Insured Persons Loss from Claims first made during the Policy Period against the Insured Persons for Wrongful Acts, except for Loss which the Company pays to or on behalf of the Insured Persons as indemnification." The Executive Risk Policy defines "Insured Person" to include "any past, present or future director or officer of [Molten Metal]." The Policy defines "Loss" as:

> (1)     any monetary damages or settlements which an Insured Person is obligated to pay as a result of any Claim.. . including but not limited to punitive or exemplary damages where insurable under applicable law, and

> (2)     any Defense Expenses which an Insured Person is obligated to pay as result of any Claim.

28. The Executive Risk Policy defines a "Claim" to include "any civil proceedings in a court of law or equity." The Executive Risk Policy defines "Wrongful Act" as:

> (1)     any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Insured Person in his or her capacity as a director or officer of the Company;

> (2)     any matter asserted against an Insured Person solely by reason of his or her status as a director or officer of the Company; and

> (3)     any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Insured Person in his or her Outside Capacity.

29. The Executive Risk Policy also provides:

> The Underwriter will, upon written request, pay on a current basis Defense Expenses for which this Policy provides coverage. Otherwise, the Underwriter will pay Loss only on the final disposition of a Claim.

## Genesis Excess Policy

30.     Upon information and belief, on or about January 19, 1997, in consideration of a premium of $65,000.00, which Molten Metal duly paid to Genesis, Genesis entered into, issued, and delivered to Molten Metal, in the Commonwealth of Massachusetts, a written contract of insurance entitled "Genesis Directors and Officers Liability Insurance Policy," bearing a policy number YXBOO1372 and covering the period from January 19, 1997 through January 19, 1998 (the "Genesis Excess Policy"). A copy of the Genesis Excess Policy is attached as Exhibit B.

## Lloyd's Excess Policy

31.     Upon information and belief, on or about January 19, 1997, in consideration of a premium of $90,000.00, which Molten Metal duly paid to Lloyd's, Lloyd's entered into, issued, and delivered to Molten Metal, in the Commonwealth of Massachusetts, a written contract of insurance entitled "Excess Directors and Officers and Company Reimbursement indemnity," bearing a policy number 542/F01230D97 and covering the period from January 19, 1997 through January 19, 1998 (the "Lloyd's Excess Policy"). A copy of the Lloyd's Excess Policy is attached as Exhibit C.

## The MMT Recovery Action

32.     On or about December 9, 2000, MMT Recovery LLC and other plaintiffs, all sophisticated investment funds who invest in distressed securities and bankrupt entities, filed claims in the Suffolk County Superior Court against Haney, Nagel, Preston, Jacks, Berman and others. See Complaint in the MMT Recovery Action, attached as Exhibit D. On January 11, 2001, some of the defendants therein removed the MMT Recovery Action to this Court.

33.     The MMT Recovery Action brought claims against fourteen defendants asserting eight counts. The gravamen of the MMT Recovery Action is that the officer and directors of

Molten Metals committed various malfeasances, including fraudulent misstatements and breach of fiduciary obligations, during the course of their solicitation of post-petition financing.

34. Specifically, the Complaint states that Nagle and Haney knew that Molten Metal's waste treatment technology did not operate as they had represented to the post-petition lenders. Nonetheless, Nagle, as chief technology officer, and Haney, as chief executive officer, had made repeated knowing misstatements about the performance of that technology, according to the Complaint.

35. The MMT Recovery Action alleges that Nagle, in a meeting of December 10, 1997, willfully lied about the performance of Molten Metal's technology in treating hazardous waste. In that meeting, it is alleged, Bitter, Hoey and Berman confirmed Nagle's lies.

36. The MMT Recovery Action further alleges that Berman and Jacks provided the post-petition lender with written materials which contained multiple falsehoods concerning the technology's performance.

37. The MMT Recovery Action further alleges that Nagle wrote a presentation to the creditors' committee containing multiple misrepresentations concerning the performance of Molten Metal's technology, and provided it to the post-petition lenders to induce their loan.

38. The MMT Recovery Action alleges that Haney, Nagel and Lewis knew that the representations being made were not true. It also alleges that R.W. Beck produced a written independent engineer's report which itself confirmed multiple misrepresentations about the technology, and later, did another investigation of the technology, for the post-petition lenders themselves, but repeated its misstatements in a report to them.

39. The MMT Recovery Action also included DSI as a defendant to a single count alleging violation of the Massachusetts Uniform Securities Act. Unlike the claims against the

other defendants and R.W. Beck, the claim against DSI did not allege any active wrongdoing on the part of DSI whatsoever. Rather, the only claim against DSI alleged that DSI was liable for the illegal and fraudulent actions of the *other* defendants, and that the reason DSI had such vicarious liability was because it was allegedly operating as a "de facto" officer of Molten Metal. The claim against DSI thus was solely status-based and the claim alleged solely passive, vicarious liability.

40.     Other entities which were not sued in the MMT Recovery Action nonetheless were actively involved in the business of Molten Metal, or the procurement of post-petition financing, and were active tortfeasors against the plaintiffs in the MMT Recovery Action.

41.     For instance, F. Gordon Bitter acted as the CEO of Molten Metal during and slightly prior to the bankruptcy. Bitter was, on information and belief, present at the meeting with the post-petition financers at which Nagel made the alleged misstatements and he supported those misstatements.

42.     Blackstone conveyed the initial investment proposal from Molten Metal to the MMT Recovery plaintiffs. Upon information and belief, as Molten Metals' financing adviser and the broker for the post-petition financing, Blackstone also caused the other defendants to make the various alleged misrepresentations to the MMT Recovery plaintiffs. Upon information and belief, Blackstone was hired to review Molten Metal's financial alternatives in or about November 1997, including a potential sale of its assets, and to consult with the company regarding those alternatives.

Related Actions To The MMT Recovery Action

43.     The MMT Recovery Action is not the only litigation involving Molten Metal and its directors and officers, although it is the only one in which DSI has been sued. In 1997

shareholders of Molten Metal commenced a class action securities fraud litigation (the "Shareholders' Litigation"), which case has now been settled. In addition, after the appointment of a Chapter 11 Trustee in Molten Metal's bankruptcy case, the Trustee commenced an action against the directors and officers entitled Stephen S. Gray, Chapter 11 Trustee v. Haney, et al, No- 99-1653 ("Trustee Action").

44. After the Insurers declined coverage of the officers and directors in the Trustee Action, certain actions were filed seeking such coverage. Another former Molten Metal director and officer sought insurance coverage from Executive Risk for claims against him in the Trustee Action, in an action entitled Peter A. Lewis v Executive Risk Indemnity, Inc , C.A. No. 00-11093 RWZ (the "Lewis Coverage Action"). Then, the Trustee sued the Insurers seeking coverage for the Trustee Action, in a case entitled Stephen S. Gray, Chapter 11 Trustee v. Executive Risk, et al, No- 00-1386, (the "Trustee Coverage Action"). After they were not allowed to intervene in the Lewis Coverage Action, various other officers and directors sued the Insurers seeking coverage for the MMT Recovery Action in Haney, et al v. Executive Risk, et al., C.A. No. 02-10248 RWZ (the "Haney Coverage Action").

Notice to Executive Risk and Declination of Coverage

45. On or about January 17, 2001, DSI timely notified Executive Risk of the claims in the MMT Recovery Action in writing by mailing a copy of the Complaint to Executive Risk. It also requested that Executive Risk advise as soon as possible regarding coverage under the Executive Risk Policy. This notice was sent within days after DSI was served with the Complaint in the MMT Recovery Action.

46. DSI fulfilled all of the conditions that the Executive Risk Policy required.

47. Executive Risk did not respond directly to DSI until June 27, 2002 concerning its claims for coverage. However, on or about January 22, 2001, Executive Risk, through its counsel, sent a letter stating that Executive Risk had no obligation under the Executive Risk Policy to defend the former officers or directors of Molten Metal in connection with the MMT Recovery Action or to indemnify them for any amounts they are obligated to pay in damages or settlement in connection with that action. Executive Risk specifically stated in that letter that DSI was not an insured under the Executive Risk Policy. Executive Risk "reserve[d] the right to amend its coverage position if it becomes appropriate to do so based on any additional information or factual or legal developments as this matter progress." A copy of the letter is attached as Exhibit E.

48. Executive Risk's reasons for denial of coverage to all the officers and directors was the same. Executive Risk contended that the claim raised in the MMT Recovery Action related back to the date of the Shareholder's Litigation, because it was similar to that litigation. As such, the claim was not made within the Executive Risk policy period. Executive Risk also claimed that a certain notice to insurers concerning the "Castle Creek Claims" constituted prior notice which caused the claim to arise prior to the Executive Risk Policy period. Executive Risk did not take a different position with respect to DSI, even though DSI was never named in the Shareholder's Litigation.

Notice to Genesis and Declination of Coverage

49. On or about January 17, 2001, DSI timely notified Genesis of the claims in the MMT Recovery Action in writing by mailing a copy of the Complaint to Genesis. This notice was sent within days after DSI was served with the Complaint in the MMT Recovery Action.

50. DSI fulfilled all of the conditions that the Genesis Policy required.

51.     On February 15, 2001, Genesis declined coverage. Specifically, on or about February 15, 2001, Genesis, through its counsel, sent a letter to counsel for DSI stating that Genesis had no obligation under the Genesis Policy to defend DSI or hold it harmless in the MMT Recovery Action. A copy of the letter from Genesis is attached as Exhibit F. Genesis noted that while a later-arising claim such as the MMT Recovery Action could relate back to the Genesis Policy period, in this case there was no such relation back since the Shareholders' Litigation and the Castle Creek Claims were substantially different from the allegations of the MMT Recovery Action.

52.     Thus, the position of Genesis regarding coverage was diametrically opposed to that of Executive Risk.

Notice of the Underlying Action to Lloyd's and No Response As To Coverage

53.     On or about January 17, 2001, DSI timely notified Lloyd's of the claims in the Underlying Action in writing by mailing a copy of the Complaint to Lloyd's. This notice was sent within days or weeks after DSI was served with the Complaint in the MMT Recovery Action.

54.     DSI fulfilled all of the conditions that the Lloyd's Policy required.

55.     Counsel to Lloyd's, Mendes & Mount, on January 22, 2001, acknowledged receipt of DSI's January 17, 2001 letter and advised DSI to further notify the firm of Hanson & Peters, additional counsel to Lloyd's. On January 24, 2002, counsel to DSI notified Hanson & Peters of the claims by mailing a copy of the January 17, 2002 letter, re-addressed to Hanson & Peters.

56.     Counsel to Lloyd's, Sedgwick, Detert, Maran & Arnold, in a letter of January 31, 2002, acknowledged receipt of the January 17, 2001 letter, and reserved all rights of Lloyd's,

particularly to deny coverage on the basis that DSI is not an insured under the Lloyd's Excess Policy.

57.  Notwithstanding these acknowledgments, Lloyd's never responded to the merits of DSI's demand for coverage. On or about April 9, 2001, Lloyd's, through its counsel, sent a letter to other directors and officers of Molten Metal stating that Lloyd's had no obligation under the Lloyd's Policy to defend or indemnify them or hold them harmless in the MMT Recovery Action. A copy of the letter from Lloyd's is attached as Exhibit G. Although the letter was not sent to DSI, it stated that "DSI is not an insured under [the Lloyd's Excess Policy]." The letter also incorporated the position of Genesis that the Shareholders' Litigation and Castle Creek Claims were not prior litigation or prior notice bringing the MMT Recovery Action within the Lloyd's Excess Policy period.

58.  Thus, the position of Lloyd's regarding coverage was also diametrically opposed to that of Executive Risk.

This Court Makes A Ruling Supporting DSI's Claims For Coverage

59.  In the Lewis Coverage Action, this Court handed down a ruling on December 28, 2001, which supported DSI's claims for coverage from Executive Risk.

60.  Specifically, this Court ruled, inter alia, that the Shareholders' Litigation was not "pending litigation" which excluded coverage for the Trustee Action to Mr. Lewis, a former Molten Metals officer.  One basis for the decision was that Mr. Lewis had not been sued in the Shareholders' Litigation.  The same pending litigation exclusion was also a basis for refusal of coverage to DSI, but, like Mr. Lewis, DSI also was not sued in the Shareholders' Litigation.

61.     Thus, this Court's decision further supports DSI's claims that Executive Risk should provide coverage for the Underlying Action. A copy of the Court's decision is attached hereto as Exhibit H.

## The Global Mediation

62.     The MMT Recovery Litigation was stayed shortly after its inception so that certain of the Officers and Directors could pursue insurance coverage under the claims identified above. Although that stay expired in March of 2002, the case was again delayed so that the insurers, the individual directors and officers, the bankruptcy trustees, and the other parties to the various related cases could attempt a global mediation of the various claims amongst them.

63.     On or about May 13 and 24, 2002, the parties met to attempt a global mediation. Mediation efforts continued through the rest of the summer, and although DSI had participated in the mediation efforts and had notified the Insurers of its claims, no attempt was made by the Insurers to include DSI amongst the parties they sought releases from or for in the mediation negotiations, or in the global resolution.

64.     Rather, counsel to DSI became aware that the Insurers were preparing to pay out monies from the various policies to indemnify and hold harmless the *other* alleged directors and officers, but not apparently for the benefit of DSI.

## Renewed Notice to Insurers

65.     On June 3, 2002, counsel for DSI sent a renewed demand letter to the Insurers' counsel demanding that the Insurers provide coverage to DSI, particularly in light of the mediation payments and the decision in the Lewis Coverage Action. A copy of that letter is attached hereto as Exhibit I.

66. Notwithstanding the renewed notice, Executive Risk again declined coverage to DSI.

67. Specifically, on or about June 27, 2002, Executive Risk, through its counsel, sent a letter to DSI's counsel, declining coverage, on the basis that DSI was not an insured, and on the other bases stated in its letter of January 22, 2001 to the directors and officers. The response specifically referred to and even attached the letter of January 22, 2001, despite the fact that this Court had already eliminated at least one of the defenses therein. Executive Risk further stated that the "state of the MMT Recovery Action is in flux given the advanced state of settlement negotiations" and offered to further discuss coverage only *after* the global settlement was concluded, and policy money paid for the benefit of the other alleged officers and directors. A copy of Executive Risk's June 27, 2002 letter is attached as Exhibit J.

68. For their part, neither Lloyd's nor Genesis responded in any way to DSI's renewed notification.

The Conflicting Positions of Executive Risk, Genesis and Lloyd's

69. Executive Risk on the one hand, and Genesis and Lloyd's on the other hand, have taken conflicting and inconsistent positions in declining DSI and the Officers and Directors coverage under their respective policies. Accordingly, there is a dispute between the DSI and the Insurers, and various disputes among the Insurers, which must be resolved.

70. Specifically, Executive Risk has claimed that the Shareholders' Litigation and the Castle Creek Claims are the same as the MMT Recovery Action and thus the claim arose during the Genesis and Lloyd's Excess Policy periods under the prior litigation or prior notice provisions. In other words, Executive Risk asserts that it need not provide coverage of the

Underlying Action because, among other things, Genesis and Lloyd's must provide such coverage.

71. Genesis and Lloyd's have stated a contrary position, asserting that the MMT Recovery Action differs from the Shareholders' Action and the Castle Creek Claims, and thus arose within the Executive Risk Policy period.

72. The various conflicting positions of Executive Risk, Genesis, and Lloyd's cannot each be correct, and DSI needs this Court to resolve the conflict between those positions.

Actual Controversy Between And Among DSI, The Insurers And The Other Defendants

73. As an alleged officer of Molten Metals, duly appointed by the Bankruptcy Court, DSI is entitled to coverage under the Executive Risk policy for the allegations in the MMT Recovery Action. The pending litigation and/or prior notice exclusions in the Executive Risk Policy cited by Executive Risk in its January 22, 2001 and June 27, 2002 denial of coverage letters are inapplicable to the facts at issue in the Underlying Action as to DSI.

74. Executive Risk is obligated to defend DSI in the MMT Recovery Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the claims.

75. An actual controversy exists between DSI and Executive Risk regarding Executive Risk's defense and indemnification obligations.

76. To the extent the Court agrees with Executive Risk and concludes that the allegations in the MMT Recovery Action are "the same as, or substantially similar to" the allegations in the Securities Litigation or the Castle Creek Claims, then the Court must conclude that the exclusions cited by Genesis and Lloyd's are inapplicable to the MMT Recovery Action as to DSI.

77.     Genesis and Lloyd's are therefore obligated to defend DSI in the MMT Recovery Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the claims.

78.     An actual controversy exists between DSI on the one hand, and Genesis and Lloyd's, on the other, regarding defense and indemnification obligations.

79.     An actual controversy exists between DSI, on the one hand, and the Officers and Directors, R.W. Beck, and Blackstone, on the other hand, as DSI asserts that each is responsible for defense and indemnification of it as further specified below.

COUNT I
(Declaratory Judgment as to Indemnification by Executive Risk)

80.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 79.

81.     The MMT Recovery Action seeks damages against the Plaintiff as a result of its alleged "act[s], error[s],omission[s], misstatement[s], misleading statement[s] or breach[es] of duty [in its] capacity as officer[s] or director[s] of Molten Metal," and was asserted against the Plaintiff "solely by reason of [its] ... status as an officer or director" of Molten Metal.

82.     Plaintiff is, if the allegations of the MMT Recovery Action are correct, an insured under the Executive Risk Policy.

83.     Accordingly, pursuant to the express terms of the Executive Risk Policy, the Plaintiff is entitled to a declaratory judgment that Executive Risk is obligated to defend the Plaintiff in the MMT Recovery Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the MMT Recovery Action.

## COUNT II
### (Declaratory Judgment as to Indemnification by Genesis and Lloyd's)

84.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83.

85.     The MMT Recovery Action seeks damages against Plaintiff as a result of its alleged "negligent act[s], omission[s], error[s], negligent misstatement[s], misleading statement[s], neglect or breach[es] of duty" in "the discharge of [its] duties solely in [its] capacity as director[] or officer[]" of Molten Metal.

86.     Plaintiff is, if the allegations of the MMT Recovery Action are correct, an insured under the Genesis Excess Policy and the Lloyd's Excess Policy.

87.     Accordingly, pursuant to the express terms of the Genesis Excess Policy and the Lloyd's Excess Policy, the Plaintiff is entitled to a declaratory judgment that Genesis and Lloyd's are obligated to defend the Plaintiff in the MMT Recovery Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the MMT Recovery Action.

## COUNT III
### (Breach of Contract by Executive Risk)

88.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 87.

89.     The Executive Risk Policy constitutes a contract between Molten Metal and Executive Risk. The Plaintiff, as an alleged officer of Molten Metal, is a named insured in that contract.

90.     By declining to defend the Plaintiff in the MMT Recovery Action and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the

MMT Recovery Action in accordance with the terms of the Executive Risk Policy, Executive Risk is in breach of the contract.

91.     The Plaintiff has suffered injury by reason of Executive Risk's breach and is entitled to recover attorneys' fees incurred and to be incurred in connection with the MMT Recovery Action as well as other damages in an amount to be proven at trial.

COUNT IV
(Breach of Contract by Genesis and Lloyd's)

92.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 91.

93.     The Genesis Excess Policy and the Lloyd's Excess Policy constitute contracts between Molten Metal, and Genesis and Lloyd's. The Plaintiff, as an alleged officer of Molten Metal, is a named insured in those contracts.

94.     By declining to defend the Plaintiff in the Underlying Action and also to indemnify it for any amounts it is obligated to pay in damages or settlement as a result of the MMT Recovery Action in accordance with the terms of the Genesis Excess Policy and the Lloyd's Excess Policy, Genesis and Lloyd's are in breach of their contracts.

95.     The Plaintiff has suffered injury by reason of Genesis and Lloyd's' breaches and is entitled to recover attorneys' fees incurred and to be incurred in connection with the MMT Recovery Action as well as other damages in an amount to be proven at trial.

COUNT V
(Violation of G.L. c. 176D and c. 93A by Executive Risk)

96.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 95.

97.     By failing to respond to a demand for coverage in a timely fashion and by wrongfully and repeatedly denying coverage for the Plaintiff under the Executive Risk Policy, Executive Risk violated its duties to defend and indemnify the Plaintiff.

98.     Executive Risk's conduct constitutes a willful, knowing, unfair and deceptive trade practice and an unfair claim settlement practice and thus a violation of G.L. c. 93A and c. 176D.

## COUNT VI
### (Violation of G.L. c. 176D and a 93A by Genesis and Lloyd's)

99.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 98.

100.    By wrongfully and repeatedly denying coverage for the Plaintiff under the Genesis Excess Policy and the Lloyd's Excess Policy, Genesis and Lloyd's violated their duties to defend and indemnify the Plaintiff.  Lloyd's also violated its policy by failing to respond in a timely fashion to a demand for coverage.

101.    The Defendants' conduct constitutes a willful, knowing, unfair and deceptive trade practice and an unfair claim settlement practice and thus a violation of G.L. c. 93A and c. 176D.

## COUNT VII
### (Contribution As To The Officers and Directors, R.W. Beck, and Blackstone)

102.    The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 101.

103.    If Plaintiff is liable in the MMT Recovery Action, which liability Plaintiff specifically denies, then the Directors and Officers, R.W. Beck, and Blackstone, as a result of their tortious conduct, are liable for all, a pro rata share, or other portion, of that liability.

## COUNT VIII
### (Declaratory Judgment As To Indemnification By Officers and Directors)

104.    The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 103.

105.    At all relevant times, with respect to the allegations in the MMT Recovery Action, Plaintiff was the agent of the Officers and Directors, which were Plaintiff's principals.

106.    Plaintiff faithfully and properly executed the instructions of its principals, the Officers and Directors.

107.    If Plaintiff is liable in the MMT Recovery Action, which liability Plaintiff specifically denies, then Plaintiff is entitled to indemnification from the Officers and Directors from any amount it is required to pay in damages or settlement thereof.

108.    Accordingly, Plaintiff is entitled to declaratory judgment that the Officers and Directors are obligated to defend the Plaintiff in the MMT Recovery Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement of the MMT Recovery Action.

## COUNT IX
### (Declaratory Judgment As To Indemnification By Officers and Directors, R.W. Beck, and Blackstone)

109.    The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 108.

110.    Plaintiff's alleged liability is in the nature of derivative or vicarious liability for the wrongful acts of Officers and Directors, R.W. Beck, and Blackstone, in which acts Plaintiff did not join.

111.    Accordingly, Plaintiff is entitled to declaratory judgment that Officers and Directors, R.W. Beck, and Blackstone are obligated to defend the Plaintiff in the MMT Recovery

Action, and also to indemnify it for any amounts it is obligated to pay in damages or settlement of the MMT Recovery Action.

COUNT X
(Breach Of Fiduciary Duty By Officers and Directors)

112.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 111.

113.     As noted above, Molten Metal retained DSI to perform various financial tasks. Such tasks required the Officers and Directors to make various information, records, and materials available to DSI and to do so promptly and honestly. Thus, the Officers and Directors owed a fiduciary duty to the Plaintiff, both before and after Molten Metal's bankruptcy, to provide full, accurate, and truthful information to DSI. Based on the allegations in the MMT Recovery Action, the Officers and Directors failed to do so and took other steps to mislead DSI.

114.     The Officers and Directors breached such duty by the actions noted above and alleged in the MMT Recovery Action.

115.     Plaintiff has been damaged by the Officers' and Directors' breach of their fiduciary duties.

WHEREFORE, the Plaintiff seeks judgment as follows:

1)     (a)     a declaration by this Court that Executive Risk is obligated under the Executive Risk Policy to defend and indemnify the Plaintiff in the MMT Recovery Action; or, in the alternative;

(b)     a declaration by this Court that Genesis is obligated under the Genesis Excess Policy to defend and indemnify the Plaintiff in the MMT Recovery Action; and

(c)     a declaration by this Court that Lloyd's is obligated under the Lloyd's Excess Policy to defend and indemnify the Plaintiff in the MMT Recovery Action;

2)	a declaration by this Court that the Officers and Directors, R.W. Beck, and

Blackstone are obligated to defend and indemnify Plaintiff for any liability incurred in the MMT

Recovery Action;

3)	damages for breach of contract and breach of fiduciary duty in an amount to be

determined at trial;

4)	double and/or treble damages for violation of M.G.L, c. 176D and c. 93A;

5)	all of the Plaintiffs' reasonable attorneys' fees and expenses incurred in this

action;

6)	damages in the amount of the Officers' and Directors', R.W. Beck's, and

Blackstone's combined *pro rata* or other determined share of any liability incurred by Plaintiff in

the MMT Recovery Action; and

7)	such other further relief that this Court deems just and proper.

Respectfully submitted,

DEVELOPMENT SPECIALISTS, INC.,

By its attorneys,

Richard J. Yurko (BBO# 538300)
Kevin S. Murphy (BBO# 638335)
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: December 6, 2002